UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In Re | ) | Chapter 7 |
| | ) | |
| WILLIAM C. VOEPEL, III, | ) | Case No. 02:04-19548-GBN |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| SANDRA L. VOEPEL, | ) | Adversary No. 02:05-00133 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | FINDINGS OF FACT, |
| | ) | CONCLUSIONS OF LAW |
| WILLIAM C. VOEPEL, III, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The adversary complaint of plaintiff Sandra L. Voepel to determine the dischargeability of her bankruptcy claim against defendant debtor William C. Voepel, III was tried as a bench trial on August 7, 2006. Post trial briefing was completed on September 1, 2006. An interim order was entered on September 15, 2006, announcing the court's decision.

The court has considered sworn witness testimony, admitted exhibits, pleadings and the facts and circumstances of this case. The following findings and conclusions are now entered:

**FINDINGS OF FACT**

1. Plaintiff and defendant married on November 21 of 1986 in Georgia and were divorced in Arizona in August of 2003. Two sons, aged 20 and 16 were born of the marriage. The parties agreed that during the marriage plaintiff was to function as a stay at home mother. Her current income consists principally of alimony and child support payments from defendant. Defendant

has been a commercial air line pilot since 1986 and is currently employed by U.S. Airways as a Captain. Neither party has remarried. His 2005 income was $138,893. Her reported income for the same year was $30,928. Plaintiff is the primary physical custodian of the boys.

The amended divorce decree of August 19, 2003 recognized plaintiff's lack of current job skills and accordingly awarded her alimony payments of $2,500 monthly for five years, commencing August 1, 2003. The Maricopa County Superior Court found *inter alia*:

> . . . (T)he marriage is of 16 years and the combination of Petitioner/Mother's being a stay at home Mom and the fact that she has been out of the job market precludes the possibility of gaining adequate employment to be self-sufficient at the current time. Further, Mother lacks sufficient property, including the property that the court will award her in this decree, to meet her reasonable needs.

The court awarded child support of $2,287 monthly commencing August 1, 2003. Currently, defendant's child support obligation is in the reduced amount of $1,088 monthly. He is permitted by the decree to utilize the child support and alimony payments in his federal and state income tax calculations, provided he is current in payments. The child support and alimony obligations will terminate in 2008. August 7, 2006 trial testimony ("test.") of Sandra L. Voepel and William C. Voepel III; Amended Decree of Dissolution of Marriage ("decree"), exhibit ("ex.") 1 at pgs. 2, 4-6; Exs. 6 and 9.

2. Defendant agrees the decree requires he pay or indemnify plaintiff for six credit card debt obligations, identified as MBNA, ALPA, Capital One, Citi Platinum, a second MBNA and USAA. He disputes that the decree requires him to hold plaintiff harmless or indemnify her for additional credit card debt incurred during the marriage, apparently including a 1997 discover card debt of $9,517, two 1983 First USA Bank cards of $9,800 and $8,905 and a 2002 Best Buy card of $2,447. Plaintiff agrees the decree did not specifically identify the latter credit card debts, but argues its language makes them defendant's responsibility as a divorce debt. Plaintiff also asserts the decree could not specifically identify the additional credit card debt as defendant kept their existence secret, until scheduling them in his bankruptcy filed on November 8, 2004. He

denies this. Plaintiff testified she has not brought this alleged omission to the attention of the domestic relations court.

With regard to credit card debt, the decree provides:

> THE COURT FINDS that the only two community credit cards are MBNA . . . and ALPA . . . .
> THE COURT FURTHER FINDS that four other accounts, Captial One . . . Citi Platinum . . . MBNA . . . and USAA . . . are the sole and separate obligation of the Respondent/Father, William Voepel. He shall be responsible for any and all debt on these four accounts, hold the Petitioner harmless on these four accounts, and indemnify her for any costs of collection if any of these four creditors attempt to collect. Because of the other credits, Father shall also be responsible for the MBNA account and the ALPA account. . . .
> THE COURT FURTHER FINDS it incredible that Respondent is making minimum payments and getting $300 to $400 per month in his time away from base pay, which should be used to pay on the accounts. Respondent was not making the mortgage payments and was paying the minimum on the credit cards, so there has not been a satisfactory explanation of what he was doing with his monthly income of $10,800 per month. Therefore,
> THE COURT FURTHER FINDS that the charges on the charge accounts constitutes waste of community assets and is going to require that **Respondent** pay all those debts. (Emphasis original).

Assuming *arguendo* that defendant disclosed the existence of the additional credit card debt, no explanation is offered why the domestic relations court, engaged in balancing the respective economic circumstances of each spouse, with a need to assign responsibility for existing marital debt, did not discuss these debts or assign responsibility for them. Other credit card debt was specifically discussed, assigned and the reasons for the assignment given. *See* Decree at pgs. 7-8. This fact finder does not find defendant's testimony credible. The court finds the additional credit card debt was not disclosed to nor dealt with by the domestic relations court in its decree. Defendant's closing brief at unnumbered pgs. 2-3, adversary docket item ("dkt.") 54; Plaintiff's post trial memorandum at pgs. 2-3, 4-5, dkt. 55; Test. of plaintiff and defendant; Amended bankruptcy schedule F at unnumbered pgs. 1-2, ex. 3; Decree at pgs. 7-8, ex. 1.

3. Plaintiff testified her receipt of monthly alimony of $2,500 and child support of $1,088 is her principal income. Defendant's amended bankruptcy schedule lists her as an unsecured

3

Case 2:05-ap-00133-GBN    Doc 57    Filed 09/18/06    Entered 09/18/06 15:35:39    Desc
Main Document    Page 3 of 10

creditor holding an unliquidated claim of $72,000. The alimony and reduced child support payments will end in 2008. Her parents have financially assisted her when alimony or child support was paid late. This financial support is mainly directed toward the two boys, unless plaintiff is desperate due to late alimony. She expects no inheritance. She "sold" her automobile to her parents for $17,000 in a transaction intended to give them a security interest for their financial assistance. Plaintiff pays her parents $300 monthly, when she is able, for use of the automobile. She owns no vehicles or real estate and consistently pays her parents an additional $1,200 monthly as residence rent. Both boys work. Neither financially assists plaintiff. The older son is an Arizona State University student on scholarship. The younger son also wishes to have a college education. Plaintiff does not expect him to qualify for a scholarship and does not know how college expenses can be provided for him. She previously worked 15 to 20 hours weekly as a receptionist at a Chandler, Arizona ice rink and is trying to operate an internet business.

Her 2003 tax return reported total income of $16,647, consisting of $2,490 salary from Polar Ice, $10,000 paid alimony and $3,444 from the internet business "Pins Everywhere." She testified the Polar Ice employment was more a "support system" from the owners, personal friends of hers. Before this part time employment, she last worked outside the home in 1985. Plaintiff's 2004 return disclosed total income of $28,829, consisting of $26,293 in alimony and $2,536 income from Pins Everywhere with no earned salary. The 2005 return lists income of $30,928 (reduced to $26,862 taxable income by a $4,000 tuition and $66 self-employment tax deductions) composed of $30,000 in alimony and $928 business income. She testified she chooses to continue to be a stay at home mother to her younger son and take college classes to prepare for a legal career. She is close to graduating from the University of Phoenix with a degree in criminal justice. Plaintiff holds a 401K retirement account of more than $68,000 awarded in the divorce.

Plaintiff is 42 years old and in normal health. She plans to apply to law school after her graduation at the end of 2006. She currently owes $14,500 in student loans.[1] Plaintiff is receiving

---

[1]The court accepts this testimony, as plaintiff should know what she owes. Her submitted student loan account statement however, suggests she owes $14,500 and $14,608.52
(continued...)

collection calls regarding debtor's unpaid credit card debt. The court finds plaintiff's testimony credible. Plaintiff's test.; Amended Schedule F at last pg., Ex. 3; Ex. 4 at 2003 Federal Tax Return; Ex. 5 at 2004 return; Ex. 6 at 2005 return.

    4. Defendant is also 42 years old and has worked as a commercial air line pilot without significant employment gaps since his 1986 marriage to plaintiff. He is a U.S. Airways Captain earning $12,700 per month. He currently pays monthly alimony of $2,500 and $1,088 for the support of his youngest son. These divorce obligations will terminate in 2008. Since late 2003, he resides at his girl friend's home where he shares expenses, paying $600 on the mortgage and $200 monthly for electricity. Defendant holds a 40lK retirement account of $72,000 and contributes an additional $400 monthly to it, the company minimum. He pays $400 monthly on an IRS tax debt that amounts to $29,134.96 as of May, 22, 2006. The IRS diverted his 2005 federal refund of $3,759 to this debt. His 2004 tax refund of $3,500 was spent, instead of being sent to his bankruptcy trustee as required. Accordingly, he pays $400 to $500 monthly to his trustee.[2] He estimates it will take a year to complete payments on this post petition debt.

    He pays $500 monthly on his 1999 Infinity automobile and owes $5,000 on it. Currently he makes payments of $1,021 monthly to repay a prior 401K loan and $731 on a second 401K loan obligation.[3] These payments will be completed in 2007 and 2008. Accordingly, in three years all alimony, child support, 401K and trustee reimbursement payments will be eliminated. He testifies that based on a gross monthly income of $12,714, his monthly expenses of $3,587 deducted from his $3,651 monthly net pay leaves him less than $100 monthly in disposable income. When

---

(...continued)
respectively on two separate student loans. Ex. 7.

    [2]This arrangement does not appear of record. However, the court has orally awarded the trustee summary judgment on his adversary complaint that defendant failed to turn over $5,322.72 to the estate from 2004 state and federal tax refunds totaling $6,227. Adversary 2-06-00175 minutes of May 16, 2006, adversary dkt. 9.

    [3]Debtor's reported payroll deductions in these amounts conflict with a pay statement for the two-week period ending July 14, 2006, reflecting 401K loan repayment amounts of $116.73 and 393.83 respectively. Ex. C at Schedule I; Ex. 8.

5

challenged on redirect examination, he conceded his July 14, 2006 pay statement did reflect a direct deposit to his checking account of $2,791.44 for a two-week pay period. He contends this circumstance was an aberration caused by overtime payments. The fact finder does not find the claim of minimal disposable income to be credible.[4] Defendant's test.; Ex. D; Ex. C; Ex. 8.

5. Defendant testified that following the recent merger of America West Airlines and U.S. Airways, Captains are being pressured to accept a 10% pay reduction. Further, there may be an attempt to downgrade certain Captains into First Officer status. While the current volatility of the airline industry is well known, defendant presented no supporting evidence or witnesses that would allow this testimony to be accepted as anything but speculation. Accordingly, it is not useful in weighing evidence of the parties' respective financial circumstances and the impact of non-dischargeability upon them.

6. To the extent any of the following conclusions of law should be considered findings of fact, they are hereby incorporated by reference.

**CONCLUSIONS OF LAW**

1. To the extent any of the above findings of fact should be considered conclusions of law, they are hereby incorporated by reference.

2. Jurisdiction of defendant's bankruptcy case is vested in the United States District Court for the District of Arizona. That court has referred all cases under Title 11 of the United States Code and all adversary proceedings and contested matters arising under Title 11 or related to a bankruptcy case to this court. 28 U.S.C. §157(a)(1994); Amended District Court General Order 01-15. This adversary having been appropriately referred, this court has core bankruptcy jurisdiction to enter a final order regarding dischargeability of plaintiff's claims. 28 U.S.C. §157(b)(2)(I). No party has argued to the contrary.

---

[4] Defendant may be reducing take home pay by excessive withholding. His 2005 federal refund was $3,759. Ex. D. The trustee alleged his 2004 refunds were over $6,200. *See* n.2, *id.* The tax liability was caused by the 401K loans, not inadequate withholding. Defendants test.

6

3. Conclusions of law are reviewed *de novo*. Factual findings are reviewed for clear error. *Hanf v. Summers (In re Summers)*, 332 F.3d 1240, 1242 (9th Cir. 2003). Findings of fact, whether based on oral or documentary evidence, will not be set aside unless clearly erroneous. Due regard is given to the opportunity of the bankruptcy court to judge witness credibility. Rule 8013, *F.R.B.P.* The appellate court accepts the bankruptcy court's findings, unless upon review, it is left with the definite, firm conviction that a mistake has been committed. *Ganis Credit Corp. v. Anderson (In re Jan Weilert RV, Inc.)*, 315 F.3d 1192, 1196 (9th Cir.) *amended by* 326 F.3d 1028 (9th Cir. 2003).

4. The standard of proof required of plaintiff for dischargeability litigation is the preponderance of the evidence. This standard applies to all dischargeability proceedings without exception. *Branam v. Crowder (In re Branam)*, 226 B.R. 45, 52 (B.A.P. 9th Cir.) *affd* 205 F.3d 1350 (9th Cir. 1999). Section 523(a) of the bankruptcy code excepts from a bankruptcy discharge any alimony or support obligation resulting from a separation or divorce agreement. 11 U.S.C. §523(a)(5). Defendant states he is not attempting to discharge any alimony or child support obligations. He does wish to discharge non-alimony and non-support obligations created by the amended decree. Accordingly, the alimony and child support obligations established in the decree will not be discharged in the bankruptcy case. Defendant's closing brief at 1.

5. Section 523(a)(15) of the bankruptcy code provides that a Chapter 7 discharge does not discharge a debt that does not constitute alimony or support, but is incurred in the course of a divorce, unless (A) debtor does not have the ability to pay such debt from income or property not reasonably necessary to be expended for maintenance or support of debtor or (B) discharging such debt would result in a benefit to debtor that outweighs the detrimental consequences to a former spouse. 11 U.S.C. §523(a)(15). Subsection A is the "ability to pay test." Subsection B is the "detriment test." *Jodoin v. Samayoa (In re Jodoin)*, 209 B.R. 132, 139 nn.17, 18 (B.A.P. 9th Cir. 1997). Once plaintiff demonstrates debtor incurred the debt in connection with a divorce, the burden shifts to debtor to prove subsections (A) or (B). 209 B.R. at 140. Here, the parties agree

7

that the six credit card obligations expressly dealt with by the amended decree are non-alimony and support debts, incurred in connection with a divorce. *See* finding of fact 2, *supra.*

6. First the court examines debtor's ability to pay. If debtor lacks the ability to pay, the debt is discharged. Only if debtor has the ability to pay will the court turn to §523(a)(15)(B) to measure whether the benefit of granting the discharge outweighs the detriment that discharge causes the non-debtor spouse. 209 B.R. 141, n.24. The appropriate time to apply these tests is at trial, not at the time of filing bankruptcy. The primary test for measuring debtor's ability to pay is the disposable income test. *Id.* at 142. Disposable income is debtor's income not reasonably necessary for maintenance or support of debtor, his legal dependents or debtor's business, if any. 11 U.S.C. §1325(b). Parties have been known to sacrifice their own financial well being to spite a former spouse.[5] Thus, proper application of the test considers the prospective income that debtor should earn and his reasonable expenses.

Debtor currently earns well more than $138,000 a year as a flight captain at a national air carrier. Since 2003 he has been able to share housing expenses with a companion. His automobile expenses are also modest. The fact finder does not find his claims of less than $100 in disposable income remaining after expenses to be credible. Short term, he may face a tight budget. In two to three years, however, he will have eliminated hundreds to thousands of dollars of monthly expenses by termination of his alimony and support obligations, payment in full of his 401K loans and reimbursement to his trustee of the diverted tax refund. The court concludes debtor has the ability to pay the six credit card debts over time. Findings of fact 1-2, 4.

7. Having concluded that debtor has the ability to pay, the court must now determine if the benefit of granting a discharge to debtor exceeds the detriment that discharge causes the former

---

[5]Dependant argues this precise point in his closing brief by alleging plaintiff is consciously failing to maximize income from her internet business, which does appear to be decreasing. Closing brief at 5. Defendant failed to pursue this issue at trial, so the court has no evidentiary basis to find either what the business income should reasonably be, much less that plaintiff is deliberately going into debt for student loans instead of maximizing business income.

8

spouse. The relevant inquiry focuses on the total economic situations of these parties in their new lives. 209 B.R. at 143. Because balancing the equities in applying this test requires an equitable, rather than a factual or legal conclusion, it is reviewed for an abuse of discretion. *Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116, 1121 (9th Cir. 2000). The court concludes that the economic capacity of plaintiff for future earnings is more limited than the economic capacity of defendant.

Defendant currently earns more than $100,000 annually than does plaintiff. Plaintiff's principal income source, child support and alimony will cease in two years, to her detriment and defendant's benefit. Short term, he can look forward to eliminating his 401K debt and reimbursement obligations to his trustee, as well. She must plan on how to soon replace her principal income source and finance the considerable expense of a legal education, should she be admitted to law school. The court can no better predict the future ability of plaintiff to be admitted to and complete legal education and earn a professional salary, than it could judge defendant's future prospects in the troubled airline industry. It is sufficient to conclude that for the foreseeable future, plaintiff's capacity to earn is more limited than defendant's earnings capacity. Plaintiff could have increased her income by attempting to work full time to supplement her alimony and child support, following the divorce. However, the law does not preclude her from continuing the parties' established practice of remaining a stay at home mother, while completing her education. Defendant has failed to carry his evidentiary burden regarding §523(a)(15)(B). *See, In re Myrvang* at 1121. The six credit card obligations will not be discharged in defendant's bankruptcy.

8. By its very terms, §523(a)(15) applies only to debts incurred by debtor in the course of a divorce, separation, separation agreement, divorce decree or other order from a court of record. *Short v. Short (In re Short)*, 232 F.3d 1018, 1022 at n.1 (9th Cir. 2000)(a premarital debt becomes a divorced-related debt covered by §523(a)(15) when expressly included in a decree of dissolution). The parties agree the four additional credit card obligations were not specifically mentioned in the amended decree. This court has found, consistent with plaintiff's testimony, that these additional debts were not disclosed to her during the divorce. Accordingly they could not

9

have been intended by the divorce court or the parties to be dealt with by the decree. Currently, they would not qualify as divorce related debt that is potentially nondischargeable under §523(a)(15). Finding of fact 2.

**ORDER**

Plaintiff's complaint will be sustained in part. Her bankruptcy claims of alimony, child support and to be held harmless from the credit card debt expressly identified in the decree will not be discharged in defendant's bankruptcy. The four credit card obligations not specifically identified in the decree are subject to discharge, unless further developments occur in the domestic relations case. Each party will bear their own costs and fees. A judgment will be subsequently issued by the court.

Dated this 18th day of September, 2006.

_____
George B. Nielsen, Jr.
U.S. Bankruptcy Judge

Copies emailed this 18th day
of September, 2006, to:

Martin A. Creaven
PHILLIPS & ASSOCIATES
3030 N. 3rd Street, Suite 1100
Phoenix, AZ 85012
Email: martinc@phillipslaw.ws
Attorney for Plaintiff

Harold E. Campbell
HAROLD E. CAMPBELL, PC
4041 S. McClintock Drive, #310
Tempe, AZ 85282
Email: heciii@haroldcampbell.com
Attorney for Defendant

By: /s/Rachael M. Stapleton
    Judicial Assistant